# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRACY A. STARKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 4123 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| SELECT PORTFOLIO SERVICING, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Although Plaintiff Tracy A. Starke entered into a deed-in-lieu of foreclosure agreement in May 2015 with Defendant Select Portfolio Servicing, Inc. ("SPS") to satisfy her outstanding mortgage payments, SPS refuses to honor that agreement and has called her over 1,200 times since that time to collect on the debt. In response, Starke brings this action against SPS, claiming breach of contract and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and Regulation X of the Real Estate Settlement Procedures Act ("RESPA"), 12 C.F.R. § 1024 *et seq.* SPS has filed a motion to dismiss Starke's complaint. The Court finds that Starke has sufficiently alleged the elements for a breach of contract claim and damages for her ICFA claim. She also has sufficiently pleaded revocation of consent for her TCPA claim, particularly in light of the fact that consent is an affirmative defense. Finally, the Court concludes that § 1024.35 of Regulation X provides a private right of action, allowing Starke to seek recovery against SPS for its alleged violation of that section.

# BACKGROUND[1]

On February 24, 2006, Starke executed a mortgage in favor of Nationpoint to secure a promissory note in the amount of $135,200. In December 2013, SPS took over the servicing of Starke's mortgage. Suffering financial hardship, Starke defaulted on her payments. Between April 2014 and February 2015, she sought home retention alternatives to foreclosure from SPS to no avail.

On May 18, 2015, SPS offered Starke the opportunity to participate in the federal government's Home Affordable Foreclosure Alternatives Program. Starke accepted, executing a deed-in-lieu of foreclosure agreement, which assigned, conveyed, and transferred all of her interest in and to the subject property to SPS. In exchange, SPS agreed to accept the property in full satisfaction of Starke's obligation to SPS. SPS was to prepare and record a lien release in full satisfaction of the mortgage, foregoing all rights to a deficiency judgment.

Shortly after executing the agreement, Starke received a call placed by SPS on her cellular telephone, in which SPS attempted to collect Starke's obligation to SPS. SPS obtained Starke's cellular number from her Uniform Residential Loan Application. Starke told SPS that she had executed the deed-in-lieu of foreclosure agreement and asked SPS to stop placing collection calls to her. Despite this request, Starke received no less than 1,200 collection calls from SPS between May 2015 and May 2017.

On October 15, 2015, SPS notified Starke that it needed a final meter reading and clearance letter from the Village of Romeoville to proceed with the deed-in-lieu of foreclosure process. Starke received the requested information from the Village on October 19, 2015 and forwarded it to SPS. SPS then advised Starke on both October 26 and 29, 2015 that it did not

---

[1] The facts in the background section are taken from Starke's complaint and are presumed true for the purpose of resolving the motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

need anything more from her. But on November 9, 2015, SPS told Starke that it needed an assignment of mortgage to proceed, repeating this claim on November 17, 2015, December 29, 2015, January 20, 2016, February 17, 2016, and February 18, 2016.

On April 13, 2016, SPS told Starke that her mortgage was being referred to an attorney to initiate mortgage foreclosure proceedings. On November 7, 2016, Starke, through her attorneys, sent a Notice of Error pursuant to 12 C.F.R. § 1024.35(d) and a Request for Information pursuant to 12 C.F.R. § 1024.36 to SPS, indicating that she had executed a deed-in-lieu of foreclosure agreement. But SPS continued to treat her loan as if it was in default, reporting on November 10, 2016 an amount past due of $17,784 and a balance of $121,743 to consumer reporting agencies. On November 16, 2016, SPS acknowledged receipt of Starke's letters, but it continued reporting her allegedly past due amounts to the consumer reporting agencies. On December 14, 2016, SPS provided Starke a written response to her Notice of Error and Request for Information, stating that the deed-in-lieu of foreclosure remained pending because the Village of Romeoville would not issue a clearance letter to proceed until it performed a walk-thru appraisal on Starke's property. SPS also responded that Starke had fallen behind on her account by twenty-two payments.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a

claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Breach of Contract (Count I)

SPS argues that the Court should dismiss Starke's breach of contract claim because Starke has not sufficiently alleged the material terms of the contract. To state a breach of contract claim under Illinois law, Starke must allege "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Ass'n Benefit Servs., Inc. v. Caremark Rx, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007) (citation omitted). Neither party has produced a written contract governing the agreement between SPS and Starke, but SPS does not deny the existence of the agreement. And although SPS claims Starke has not set forth the terms of the deed-in-lieu of foreclosure agreement, Starke has alleged that the parties agreed that she would convey all of her interest in and to the property to SPS in exchange for SPS providing a lien release in full satisfaction of the mortgage with SPS foregoing all rights to a deficiency judgment. Starke further alleges that she has performed all conditions necessary, assigning the property to SPS, surrendering possession of the property, and obtaining clearance from the Village of Romeoville as requested. She claims that SPS breached the agreement by failing to prepare and record the lien release and continuing to treat the mortgage as if it is in default. These allegations sufficiently state a breach

of contract claim, putting SPS on fair notice of its alleged breaches.[2] *See Peerless Network, Inc. v. MCI Commc'n Servs., Inc.*, No. 14 C 7417, 2015 WL 2455128, at *5–7 (N.D. Ill. May 21, 2015) (siding with those courts finding that a plaintiff is not required to cite specific contract provision that have been breached but must at least place the defendant "on fair notice of the 'contractual duty' it breached").

SPS also argues that, to the extent the Court allows the breach of contract claim to proceed, Starke's request for attorneys' fees and costs arising from the breach should be dismissed because Starke does not allege the agreement allows for such damages nor is there statutory authority allowing her to collect attorneys' fees and costs for a breach of contract. Starke acknowledges that, under the American Rule, recognized in Illinois, "absent a statute or contractual provision, a successful litigant must bear the burden of his or her own attorney's fees." *Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003, 1006 (7th Cir. 1989). In recognition of this rule, Starke withdraws her request for attorneys' fees and costs associated with her breach of contract claim and the Court strikes this request from the complaint.

## II.     ICFA (Count II)

Starke claims that SPS engaged in unfair acts and practices by failing to honor the deed-in-lieu of foreclosure agreement and placing over 1,200 calls to Starke's cellular telephone despite Starke's revocation of consent. To state an ICFA claim, Starke must allege (1) a deceptive or unfair act or practice by SPS, (2) SPS' intent that Starke rely on the deceptive or unfair practice, (3) the unfair or deceptive practice occurred in the course of conduct involving trade or commerce, and (4) SPS' unfair or deceptive practice caused Starke actual damage.

---

[2] In its reply brief, SPS argues that Starke has not alleged any cognizable damages resulting from the alleged breach of contract. But SPS waived this argument by raising it for the first time in its reply brief. *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived.").

5

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). Starke may recover for either deceptive or unfair conduct, but she pursues only an unfair practices claim. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960, 201 Ill. 2d 403, 266 Ill. Dec. 879 (2002); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) ("A plaintiff may allege that conduct is unfair under ICFA without alleging that the conduct is deceptive."). An unfair practices claim need not meet Rule 9(b)'s heightened pleading standard because it is not based on fraud. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). Therefore, the Court need not address SPS' argument that Starke has failed to meet Rule 9(b)'s specificity requirements.[3]

But SPS also argues that Starke has failed to adequately allege actual damages so as to allow her to recover under ICFA. These actual damages "must arise from 'purely economic injuries.'" *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 912 (N.D. Ill. 2012) (quoting *Cooney v. Chicago Pub. Schs.*, 943 N.E.2d 23, 31, 407 Ill. App. 3d 358, 347 Ill. Dec. 733 (2010)). Starke can only recover damages for emotional distress, inconvenience, and aggravation to the extent she also adequately alleges economic damages. *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 901 (N.D. Ill. 2012). In other words, emotional damages are not sufficient to support an ICFA claim on their own. *Thrasher-Lyon*, 861 F. Supp. 2d at 913.

Starke claims that she suffered damages such as medical bills, postage, credit denials, diminished battery capacity and data space, increased usage of cellular services and electricity, and inconvenience. She alleges she suffered not only emotional distress but also physical illness and injury. Given that the Court must draw all inferences in Starke's favor, her medical bills

---

[3] SPS points out in reply that Starke seeks punitive damages with respect to her ICFA claim, alleging that "consumers reasonably anticipate that mortgage servicers will not use false, deceptive or misleading representations or means regarding their accounts." Doc. 1 ¶ 49(b). This allegation appears closer to an allegation of a deceptive business practice, but because Starke disclaims reliance on deceptive business practices to support her ICFA claim, the Court disregards the allegation.

could plausibly have arisen from not only emotional distress but also physical illnesses. These medical bills, coupled with her claims for postage related to her efforts to resolve her issues with SPS, although likely minimal, suffice to allege actual damages at this stage. *See Messina v. Green Tree Servicing, LLC*, 210 F. Supp. 3d 992, 1005 (N.D. Ill. 2016) (finding on summary judgment that having to pay out-of-pocket costs for medications as a result of defendant's conduct, in addition to suffering from aggravation and stress that caused migraines, chest pains, and sleepness nights, among other problems, sufficiently demonstrated substantial injury); *People ex rel. Hartigan v. Stianos*, 475 N.E.2d 1024, 1029, 131 Ill. App. 3d 575, 86 Ill. Dec. 645 (1985) ("While the three sales upon which this case is premised reflect only a few cents in overcharges, it is apparent that similar overcharges, if permitted to continue, could aggregate very substantial losses and injury to the consuming public."). Therefore, Starke may proceed to discovery on her ICFA claim.

## III. TCPA (Count III)

The TCPA prohibits the use of an automatic telephone dialing system or prerecorded voice to call a cellular telephone without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). SPS argues that Starke consented to receive calls by providing her cellular phone number on her loan application and so has no actionable TCPA claim. Consent is an affirmative defense on which SPS bears the burden of proof, with dismissal warranted only if Starke has pleaded herself out of court by alleging all the elements of the defense in her complaint. *See Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 734 (N.D. Ill. 2014) (defendant bears the burden of establishing affirmative defense of express consent, with a court able to dismiss suit on basis of such defense only if it is obvious on the face of the complaint); *Thrasher-Lyon*, 861 F. Supp. 2d at 905 (collecting cases noting that express consent is not an element of a

7

plaintiff's TCPA prima facie case). Starke responds that although SPS obtained her cellular number from the loan application, she has alleged that she revoked that consent by requesting that SPS stop placing collection calls to her.

The Federal Communications Commission ("FCC") issues regulations implementing the TCPA, and the FCC's final orders bind the Court under the Hobbs Act. *See CE Design Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446–50 (7th Cir. 2010). Once an individual gives consent, that consent is effective until revoked. *Michel v. Credit Prot. Ass'n L.P.*, No. 14-cv-8452, 2017 WL 3620809, at *3 (N.D. Ill. Aug. 23, 2017). "[A] called party may revoke consent at any time and through any reasonable means," provided that the called party does so in a "manner that clearly expresses a desire not to receive further messages." *In re: Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2015 Order"), 30 FCC Rcd. 7961, 2015 WL 4387780, ¶¶ 47, 63 (July 10, 2015).[4] One example of a valid method of revoking consent provided by the FCC is doing so "directly in response to a call initiated or made by a caller." *Id.* ¶ 64. Here, Starke has alleged she did just that, telling the SPS caller to stop making collection calls to her cellular telephone. Although SPS alleges that Starke's revocation was not sufficiently explicit, the Court finds it suffices at this stage, particularly where the existence of consent is an affirmative defense. *See Goggans v. Transworld Sys., Inc.*, No. 16 C 2387, 2017 WL 1344527, at *4–5 (N.D. Ill. Apr. 12, 2017) (finding dispute of fact at summary judgment stage as to whether plaintiff revoked consent where she testified she

---

[4] The U.S. Court of Appeals for the D.C. Circuit is currently considering a case, *ACA International v. FCC*, No. 15-1211 (D.C. Cir. argued Oct. 19, 2016), which seeks judicial review of the 2015 Order, including issues concerning what constitutes sufficient revocation of consent. *See Kotlyar v. Univ. of Chicago*, No. 17 C 4729, 2017 WL 5911287, at *4 (N.D. Ill. Nov. 30, 2017) (granting stay in TCPA case involving issues of revocation of consent where D.C. Circuit's guidance could impact resolution of case). The parties in this case have not asked for a stay.

repeatedly answered phone calls from defendant and told defendant to stop calling her). Therefore, the Court allows Starke to proceed on her TCPA claim.

## IV. Regulation X (Count IV)

Finally, SPS argues that Starke's claim for violation of Regulation X fails because Regulation X does not provide a private right of action for the specific provision Starke claims SPS violated, 12 C.F.R. § 1024.35. Starke argues that SPS violated 12 C.F.R. § 1024.35(i)(1) by furnishing adverse information to consumer reporting agencies within sixty days of receiving her November 7, 2017 Notice of Error. SPS acknowledges that a plaintiff may bring a claim for violations of other sections of Regulation X, as those sections explicitly convey a private right of action by allowing for enforcement through 12 U.S.C. § 2605. *See, e.g.*, 12 C.F.R. § 1024.41(a) ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."). But SPS argues that because § 1024.35 does not include such language, Starke cannot bring a claim for violation of any of that section's provisions.

Courts are divided as to whether plaintiffs may pursue a claim for violations of § 1024.35. *Compare Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1007 (11th Cir. 2016) (recognizing private right of action), *with Brown v. Bank of N.Y. Mellon*, No. 1:16-cv-194(LMB/IDD), 2016 WL 2726645, at *2 (E.D. Va. May 9, 2016) (refusing to recognize private right of action). Some align with SPS, arguing that because a right of action is not explicitly provided in the section itself, no such right of action exists. *See, e.g.*, *Willson v. Bank of Am., N.A.*, No. 15-14303-CV-Middlebrooks, 2016 WL 8793204, at *8 (S.D. Fla. May 2, 2016); *Miller v. HSBC Bank U.S.A., N.A.*, No. 13 Civ. 7500, 2015 WL 585589, at *11 (S.D.N.Y. Feb. 11, 2015). The Court respectfully disagrees with this position, however.

9

"Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001). Where a statute provides for enforcement through a private cause of action, a regulation may also be enforced in the same way. *Id.* at 285; *see also Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 906 (6th Cir. 2004) ("[A] private plaintiff cannot enforce a regulation through a private cause of action generally available under the controlling statute if the regulation imposes an obligation or prohibition that is not imposed generally by the controlling statute. On the other hand, if the regulation simply effectuates the express mandates of the controlling statute, then the regulation may be enforced via the private cause of action available under that statute."). Here, in enacting the relevant sections of Regulation X, the Consumer Financial Protection Bureau ("CFPB") tied § 1024.35 to a privately enforceable statute, stating that it implements "section 6(k)(1)(C) of RESPA, and to the extent the requirements are also applicable to qualified written requests, sections 6(e) and 6(k)(1)(B) of RESPA." *Mortgage Servicing Rules under the Real Estate Settlement Procedures Act (Regulation X)* ("*Mortgage Servicing Rules*"), 78 Fed. Reg. 10696, 10737 (Feb. 14, 2013). And § 2605(f) explicitly provides a private cause of action for violations of those statutory sections. 12 U.S.C. § 2605(f); *see also Mortgage Servicing Rules*, 78 Fed. Reg. at 10714 n.64 ("The Bureau notes that regulations established pursuant to section 6 of RESPA are subject to section 6(f) of RESPA, which provides borrowers a private right of action to enforce such regulations."). Therefore, § 1024.35 effectuates a privately enforceable statutory right, and Starke may proceed on her claim to enforce that right. *See Sutton v. CityMortgage, Inc.*, 228 F. Supp. 3d 254, 270–71 (S.D.N.Y. 2017) (assuming that a private right of action exists under § 1024.35, based on the CFPB's statements, the remedial purposes of

10

RESPA and Regulation X, and the existence of a private right of action by way of § 2605(f)); *cf. Schmidt v. PennyMac Loan Servs., LLC*, 106 F. Supp. 3d 859, 868–71 (E.D. Mich. 2015) (finding that § 1024.40 of Regulation X does not allow for a private cause of action where the CFPB did not rely on a privately enforceable statutory right in enacting that section).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part SPS's motion to dismiss [14]. The Court strikes Starke's request for attorneys' fees and costs in connection with her breach of contract claim (Count I). The Court orders SPS to answer the remaining allegations of the complaint by January 12, 2018.

Dated: December 18, 2017

                                          SARA L. ELLIS
                                          United States District Judge